*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

UNPUBLISHED
August 22, 2024

*In re* A. ANDERSON, Minor.

No. 370017
Ingham Circuit Court
Family Division
LC No. 21-000296-NA

Before: MALDONADO, P.J., and M. J. KELLY and RICK, JJ.

PER CURIAM.

Respondent-father appeals as of right the order of the trial court terminating his parental rights to his minor child under MCL 712A.19b(3)(c)(*i*) and (j).[1] We affirm because there are no errors warranting reversal.

## I. BASIC FACTS

This case arose in April 2021 as a result of the child's mother having mental-health issues. She had struck her child in the face and was unable to provide care for her. At the request of petitioner, the trial court removed the child from her mother's care and authorized the petition. The child was placed in the care of maternal relatives. After the child's mother pleaded to jurisdiction, the court took jurisdiction over the child.

As it relates to respondent, petitioner alleged that respondent was the child's putative father and that he likely lived in Minnesota. Petitioner, however, was unable to locate or contact him. In May 2022, the court entered an order reflecting that the child had no legal father because her natural father had failed to establish paternity. Later, respondent contacted petitioner and indicated that he wanted to participate in his child's life. As a result, the court set aside its earlier order and found that respondent was, in fact, the child's legal father. Subsequently, petitioner continued its

---

[1] Although the parental rights of the child's mother were also terminated, she is not a party to this appeal.

attempts to contact respondent, but was unsuccessful. As a result, in January 2023, petitioner filed a supplemental petition against him, seeking jurisdiction over the child based upon allegations that respondent lacked a relationship with the child, had a criminal history involving domestic violence and assault, was on probation in Minnesota, and lacked housing and employment. The trial court authorized the petition, and a case services plan was developed for respondent.

Respondent's compliance with the case-services plan was poor. He was unable to remain sober and did not consistently participate with his substance-abuse and mental-health services. He also failed to obtain employment, violated the terms of his probation, and did not regularly attend parenting-time visits. The visits that respondent did attend went poorly, and the child exhibited behavioral problems afterward. Respondent also only communicated sporadically with his caseworkers, who generally had difficulty obtaining information from and about him. In October 2023, petitioner filed a supplemental petition seeking termination of respondent's parental rights. Following a December 2023 termination hearing, the trial court entered an order terminating respondent's parental rights.

## II. BEST INTERESTS

### A. STANDARD OF REVIEW

Respondent argues that the trial court erred by finding by a preponderance of the evidence that termination of his parental rights was in the child's best interests. Challenges to a trial court's best-interests determination are reviewed de novo. *In re A Atchley*, 341 Mich App 332, 346; 990 NW2d 685 (2022). "A finding is clearly erroneous if, although there is evidence to support it, this Court is left with a definite and firm conviction that a mistake has been made." *In re Hudson*, 294 Mich App 261, 264; 817 NW2d 115 (2011).

### B. ANALYSIS

"The focus at the best-interest stage has always been on the child, not the parent." *In re A Atchley*, 341 Mich App at 346 (quotation marks and citation omitted). "The trial court should weigh all the evidence available to determine the children's best interests." *In re White*, 303 Mich App 701, 713; 846 NW2d 61 (2014). In its determination, the trial court may consider factors such as "the child's bond to the parent, the parent's parenting ability, the child's need for permanency, stability, and finality, and the advantages of a foster home over the parent's home." *In re Olive/Metts Minors*, 297 Mich App 35, 41-42; 823 NW2d 144 (2012) (citations omitted). "The trial court may also consider a parent's history of domestic violence, the parent's compliance with his or her case service plan, the parent's visitation history with the child, the children's well-being while in care, and the possibility of adoption." *White*, 303 Mich App at 714. Finally, the child's placement with a relative is "an explicit factor to consider in determining" the child's best interests. *In re Olive/Metts*, 297 Mich App at 43 (quotation marks and citation omitted).

In this case, the child was placed with maternal relatives. Respondent contends on appeal that the trial court did not properly consider her relative placement when determining her best interests. We disagree.

The trial court explicitly acknowledged that the child's placement with relatives weighed against a finding that termination of respondent's parental rights was in her best interests.

However, the court also correctly recognized that placement with a relative is only one factor. The court found that there was no bond between respondent and the child. Indeed, the child resisted parenting-time visits and was negatively affected by the visits that she participated in. Her therapist opined that she was not ready for additional parenting time. Moreover, the court considered the child's need for permanence, stability, and finality. At the time of termination, the child had been in care for over three years. Respondent was not in a position to provide her with stability, permanence, and finality. He had ongoing issues with substance abuse, which included both relapses and inconsistent participation in substance abuse counseling. His housing and employment status were unstable, and his overall ability to rectify the barriers to reunification was hampered by his inability to maintain regular contact with the caseworkers. Finally, the trial court considered the advantages of the child's current placement over an uncertain future placement with respondent. The court recognized that the child's foster parents were addressing the child's mental-health issues, had provided her with a stable environment, and were willing to adopt both her and her half-brother.

Respondent also suggests that the trial court should have considered a guardianship for the child as opposed to termination of his parental rights. "Typically, the appointment of a guardian is done in an effort to avoid termination of parental rights." *In re Rippy*, 330 Mich App 350, 359; 948 NW2d 131 (2019) (quotation marks and citation omitted). No one petitioned the trial court for a guardianship in this case, nor is there any indication that the child's relative placement would have been amenable to such an arrangement. In *Rippy*, this Court explained that, under MCL 712A.19a(9), before a guardianship may be considered "one of two conditions must be met: either [petitioner] must demonstrated under MCL 712A.19a(8) that initiating the termination of parental rights to the child is clearly not in the child's best interests or the court must not order the agency to initiate termination proceedings under MCL 712A.19a(8)." *Id*. at 359 (quotation marks, brackets, and citation omitted). Additionally, in order for a guardianship to be established, the trial court must find that a guardianship is in the child's best interests. *Id*. at 360. Here, the trial court found that *termination* was in the child's best interests, and there is no indication that either of the conditions precedent under MCL 712A.19a(9) were met. Accordingly, on this record, respondent's argument that a guardianship should have been established is without merit.

Based upon the foregoing, we conclude that the trial court did not clearly err by finding that termination of respondent's parental rights was in the child's best interests.

Affirmed.

/s/ Allie Greenleaf Maldonado
/s/ Michael J. Kelly
/s/ Michelle M. Rick

-3-